IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN JACQUETT, | ) |
| Petitioner, | ) No. CV-06-2938 RHW JPH ) |
| v. | ) REPORT AND RECOMMENDATION TO ) DENY WRIT OF HABEAS CORPUS ) |
| D. K. SISTO | ) |
| Respondent. | ) ) ) ) |

**BEFORE THE COURT** is a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody (Ct. Rec. 1), Respondent's Answer (Ct. Rec. 8), and Petitioner's Traverse (Ct. Rec. 9). Respondent is represented by Deputy Attorney General Kasey E. Jones. Petitioner appears in propria persona. This matter was heard without oral argument. After careful review and consideration of the pleadings submitted, it is recommended that the Petition for Writ of Habeas Corpus be **denied**.

At the time his petition was filed, Petitioner was in custody of the California Department of Corrections and Rehabilitation, pursuant to his 1974 San Diego County conviction for murder in the first degree with an enhancement for use of a firearm. (Ct. Rec. 1

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 1 -

at 1; Penal Code sections 187, 189, 12022.5). Petitioner, represented by counsel, pleaded not guilty to the charge, but was convicted to life imprisonment plus five years with eligibility for parole after seven years on December 4, 1974. Id. Petitioner challenges the Board of Prison Terms's (now the Board of Parole Hearings) decision to deny him parole at his 2004 parole consideration hearing.

**I. BACKGROUND**

**A. Factual History**

On July 19, 2004, the Board of Prison Terms ("the Board") decided that Petitioner was not suitable for parole because he posed a danger to public safety. During the parole consideration hearing, Petitioner took responsibility for the crime described by the Board's Statement of Facts:

> Presiding Commissioner Daly: 'This was a crime that occurred on May 19th of 1974, at about 5:30 p.m., and the victim was Kenneth Riser. He was 21 years of age. He was sitting on the grass in Moutainview Park in San Diego with a group of friends. And he was approached by two black males, one of them being you, and they said something to the victim, and the friends did not understand. And then one of the defendants produced a pistol and commenced firing. Riser jumped to his feet and began running with two men in pursuit shooting as they ran, and the victim discarded his jacket. He then disappeared on the crest of the hill, and the gunman picked up the jacket and two men entered an automobile and sped away, and the victim collapsed nearby. And enroute to the hospital he said that he had been shot by Stephen Jacquett, and he died soon after reaching the hospital and was found to have three .32 caliber wounds in his back and his thigh, and the cause of death was hemorrhage due to a perforated aorta.' And witnesses also identified you as the gunman. And when the officers searched your room, they found clothing that was similar to what had been described as being worn by the person who did the shooting. And it just indicates that you and the victim had known each other for several years. Is this a true kind of, a true reflection of what happened

  that day?
   Inmate Jacquett: The circumstances, yes. The only disputed fact is he was shot in the back, because if you'll read the legal documents from the District Attorney's Office, they say he was shot three times in the chest and once in the thigh.
   Presiding Commissioner Daly: Okay. So do you take responsibility for this crime?
   Inmate Jacquett: Yes, Ma'am.

(Ct. Rec. 1 at 80-82.)

Petitioner claimed that the reason for shooting the victim were previous threats the victim made against his family. (Ct. Rec. 1 at 83.) However, there was also evidence that Petitioner may have been motivated by two recent altercations with the victim, which the victim had won. (Ct. Rec. 1 at 131.) Petitioner also claimed that he entered the park intending to shoot the victim, but did not consider that he would kill him. (Ct. Rec. 1 at 84.)

The Board found that Petitioner was not yet suitable for parole because he would "pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Ct. Rec. 1 at 130.) The Board based this finding on several factors. First, in regard to the nature of the original crime, the Board found that the offense was "carried out in a very callous manner" and "in quite a calculated manner" because Petitioner brought a firearm with him when he saw the victim and got out of his car. (Ct. Rec. 1 at 130.) The Board also found that the offense demonstrated "a total disregard for human suffering" because Petitioner shot the victim multiple times, and continued shooting though the victim was "running for his life." (Ct. Rec. 1 at 130). Finally, the board found that the motive for the crime

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 3 -

was "very trivial in relation to the offense." (Ct. Rec. 1 at 130.)

The Board also found that there were reasons to deny parole that did not relate to the original offense. First, the Board pointed to Petitioner's record of assaultive behavior including battery on a police officer and resisting arrest. (Ct. Rec. 1 at 132.) Petitioner had also been charged with marijuana possession, burglary, loitering, possession of firearms on campus, and possession of narcotics. (Ct. Rec. 1 at 132.) Second, the Board found that Petitioner had an unstable social history. Petitioner admits to using alcohol and marijuana and trying Benzedrine and Seconal. (Ct. Rec. 1 at 132.) Third, the Board was concerned by Petitioner's institutional behavior. Petitioner had recently (March 2004) had a 115 disciplinary report for disobeying a direct order as well as three previous 115s in 1994-1995. (Ct. Rec. 1 at 132.) The Board referred to the psychological report created for the parole hearing that indicated that Petitioner was "somewhat hesitant to take full responsibility for his actions" in receiving the 115s. (Ct. Rec. 1 at 132.) The Board was also concerned that the report says that Petitioner has avoided Alcoholics Anonymous. (Ct. Rec. 1 at 132, 136.) The report concluded that Petitioner posed a moderate degree of threat at the time of the hearing. (Ct. Rec. 1 at 134).

The Board did find some factors in Petitioner's favor. Petitioner's parole plans were found to be valid and Petitioner has family dedicated to his success if released. (Ct. Rec. 1 at 134.) The Board was also pleased with Petitioner's progress toward

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 4 -

furthering his education, learning vocational skills, and his involvement with prison programs such as being Chair of the Men's Advisory Council. (Ct. Rec. 1 at 134-135). However, the Board concluded that the positive factors did not outweigh factors of unsuitability. (Ct. Rec. 1 at 136.)

**B.  Procedural History**

On January 3, 2005 Petitioner filed his first Petition for Writ of Habeas Corpus with the Superior Court for the State of California, which was denied February 25, 2005. (Ct. Rec. 2; Ct. Rec. 8 Ex. 3.) The court acknowledged that the Board's discretion is very broad and that due process is satisfied "as long as there is 'some evidence' to support the findings made at the hearing" that Petitioner poses a danger to the public (Ct. Rec. 8 Ex. 3 at 3.) The court found that the Board's finding regarding the commitment offense were adequately supported by there being some evidence in the record that the offense was carried out in a callous and calculated manner, the offense was carried out in a manner which demonstrates a total disregard for human suffering, and the motive for the crime was very trivial in relation to the offense. (Ct. Rec. 8 Ex. 3 at 4.) The court found these three factors to justify the Board's decision under California Penal Code section 3041(b), which requires that a release date be set unless the gravity of the commitment offense requires the prisoner to stay incarcerated for public safety reasons. (Ct. Rec. 8 Ex. 3 at 4-5.)

Though the court states that parole could have been denied on the basis of the commitment offense alone, it went on to state the

1 other reasons for the Board's finding of current danger to the
2 public: Petitioner's "assaultive behavior, his prior criminal
3 record, his prior unstable social history," his "admission of drug
4 use," his 115s, and his failure to take advantage of self-help
5 until recently. (Ct. Rec. 8 Ex. 3 at 5.)

6 Petitioner next appealed his petition to the California Court
7 of Appeal. (Ct. Rec. 8 Ex. 4.) The court denied the petition on
8 May 17, 2005 noting that there was "some evidence" to support the
9 Board's decision to deny parole. (Ct. Rec. 8 Ex. 4 at 3.)

10 Petitioner appealed again to the Supreme Court of California.
11 (Ct. Rec. 2 at 51.) The court considered the petition en banc and
12 denied March 22, 2006 based on In re Miller (1941) 17 Cal.2d
13 734,735, In re Rosenkrantz (2002) 29 Cal. 4th 616, and In re
14 Dannenberg (2005) 34 Cal.4th 1061.

15 Petitioner filed this petition with the U.S. District Court
16 for the Eastern District of California on December 29, 2006. He
17 did not request an evidentiary hearing.

18 **II. EXHAUSTION OF STATE REMEDIES**

19 As a preliminary issue, Petitioner must have exhausted his
20 state remedies before seeking habeas review.  The federal courts
21 are not to grant a Writ of Habeas Corpus brought by a person in
22 state custody pursuant to a state court judgment unless "the
23 applicant has exhausted the remedies available in the courts of
24 the State." Wooten v. Kirkland, 540 F.3d 1019, 1023 (9th Cir.
25 2008), citing 28 U.S.C. §2254(b)(1)(A).  "This exhaustion
26 requirement is 'grounded in principles of comity' as it gives
27 states 'the first opportunity to address and correct alleged
28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 6 -

violations of state prisoner's federal rights.'" Id., citing Coleman v. Thompson, 501 U.S. 722, 731 (1991).

In order to exhaust state remedies, a petitioner must have raised the claim in state court as a federal claim, not merely as a state law equivalent of that claim. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995). The state's highest court must be alerted to and given the opportunity to correct specific alleged violations of its prisoners' federal rights. Wooten, 540 F.3d at 1023, citing Picard v. Connor, 404 U.S. 270, 275 (1971). To properly exhaust a federal claim, the petitioner is required to have presented the claim to the state's highest court based on the same federal legal theory and the same factual basis as is subsequently asserted in federal court. Hudson v. Rushen, 686 F. 2d 826, 829-30 (9th Cir. 1982), cert. denied, 461 U. S. 916 (1983).

Respondent may waive the exhaustion requirement. See 28 U.S.C. § 2254 (b)(3) ("A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance on the requirement unless the state, through counsel, expressly waives the requirement.") Respondent's answer to the petition states "Respondent admits that Petitioner has exhausted his state judicial remedies as to the Board's 2004 denial of parole," but denies that he has exhausted "any claims more broadly interpreted to challenge California's parole scheme." (Ct. Rec. 8 at 4 p 12.) This clearly constitutes an express waiver by counsel of the exhaustion requirement of the petitioner's claim regarding the parole decision. See Dorsey v. Chapman, 262 F. 3d 1181, 1187 at

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 7 -

1  n. 8 (11th Cir. 2001). Generally, a habeas court may, in its
2  discretion reach the merits of a habeas claim or may insist on
3  exhaustion of state remedies despite a State's waiver of the
4  defense.  See Boyd v. Thompson, 147 F. 3d 1124, 1127 (9th Cir.
5  1998).  The court's discretion should be exercised to further the
6  interests of comity, federalism, and judicial efficiency.  See id.
7       It appears to advance the interests of the parties and
8  judicial efficiency (without unduly offending the interests of
9  either comity or federalism) for the Court to decide petitioner's
10 claim is exhausted and may, unless otherwise barred, be considered
11 on the merits. Respondent concedes that because Petitioner has
12 properly exhausted his state habeas claim, the court should
13 consider the claims but dismiss them on the merits.  (Ct. Rec. 8
14 at 4.)

### III. AEDPA STATUTE OF LIMITATIONS

16       The current federal petition was filed December 29, 2006.
17 (Ct. Rec. 1 at 1.)  Its disposition is therefore governed by the
18 Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),
19 effective April 24, 1996. According to 28 U.S.C. § 2244 (d)(1)(A)
20 A 1-year period of limitation applies for filing a Writ of Habeas
21 Corpus that runs from "the date on which the judgment became final
22 by the conclusion of direct review or the expiration of the time
23 for seeking such review" if no later date from (B)-(D) applies.
24       The Supreme Court of California denied Petitioner's Writ of
25 Habeas Corpus on March 22, 2006 (Ct. Rec. 2 at 51.) Petitioner
26 filed this petition within a year of that denial on December 29,
27 2006. Respondent admits that Petitioner was timely in filing his
28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 8 -

1  Writ. (Ct. Rec. 8 at 4 p 13.)

## IV. MERITS

Under AEDPA, a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254 (d). "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." Lockyer v. Andrade, 538 U.S. 63, 71 (2003), referring to Weeks v. Angelone, 528 U.S. 225 at 237 (2000). Where no decision of the Supreme Court "squarely addresses" an issue or provides a "categorical answer" to the question before the state court, § 2254(d)(1) bars relief. Moses v. Payne, 543 F. 3d 1090, 1098 (9th Cir. 2008), relying on Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); Carey v. Musladin, 549 U.S. 70 (2006).

In the time since this petition was filed, the Ninth Circuit considered Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) en banc to determine issues similar to those presented in this case. First, the court stated that to the extent its prior decisions could be interpreted to recognize a federal constitutional right to parole independent of entitlements given by state law, they were overruled. Id. at 555; see Biggs v. Terhune, 334 F.3d 910,

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 9 -

Sass v. California Board of Prison Terms, 461 F.3d 1123, and Irons v. Carey, 505 F.3d 846. Because there is no federally created right to parole, there is also no federal or constitutional "some evidence" requirement. Hayward, 603 F.3d at 559. In support of this view, the court discusses Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979), which states, "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."

Though federal law does not entitle a prisoner to parole without "some evidence" of dangerousness, state law may create that entitlement under the Due Process Clause. Hayward, 603 F.3d at 560. Under California's law, a prisoner has a right to parole once the Board determines the prisoner does not pose an "unreasonable risk of danger to society if released from prison." Cal. Admin. Code tit. 15, § 2281(a) (2004). If the prisoner does pose an unreasonable risk of danger, the Board will find the prisoner unsuitable for parole and the prisoner is not entitled to a set date for release. Id. The Board must take all information into consideration when determining whether the prisoner meets this standard:

> Such information shall include the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 10 -

Cal. Admin. Code tit. 15, § 2281(b) (2004).

Circumstances that tend to show that a prisoner is unsuitable for parole include a commitment offense committed in an especially heinous or cruel manner (including, inter alia, calculation, an exceptionally callous disregard for human suffering, and trivial motive in relation to the offense), a previous record of violence, an unstable social history, and problematic institutional behavior. Cal. Admin. Code tit. 15, § 2281(c).

In California, an "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Hayward, 603 F.3d at 561, citing People v. Wingo, 534 P.2d 1001, 1011 (1975). The Board does have broad discretion, but denial of parole must be supported by "some evidence of future dangerousness." Hayward, 603 F.3d at 562, citing 59 In re Lawrence, 190 P.3d 535, 549 (2008); In re Shaputis, 190 P.3d 573, 582 (2008). Because the original reason for incarceration is unchanging, and the concept of parole allows for rehabilitation, a decision to deny parole must be based on more than just the original offense, there must also be "something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state that supports the inference of dangerousness." Id.

Because there is no federal right to parole our task is to determine whether California's judicial decision was an "unreasonable application" of California's some evidence of future dangerousness requirement or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 11 -

F.3d at 563; 28 U.S.C. § 2254 (d)(1). California's Superior Court found that the Board had some evidence of future dangerousness based on not only Petitioner's commitment offense, but also his criminal history, unstable social history, and his incarceration history. (Ct. Rec. 8 Ex. 3 at 5.)

Though a determination of Petitioner's future dangerousness to the public cannot be entirely based on his commitment offense, it was not unreasonable for California's Superior Court to find that the Board had some evidence of future dangerousness based on the commitment offense. There is some evidence that the offense was committed in a callous, calculated manner, that there was a disregard for human suffering, and that the provocation was very trivial in relation to the offense. Petitioner brought a gun with him when he exited his car after seeing the victim. (Ct. Rec. 1 at 81.) The Petitioner also continued to fire shots at his victim, though the victim had already been hit and was running away. Id. Finally, whether Petitioner's motivation for shooting his victim was threats to Petitioner's family or recently losing altercations to the victim, it is not unreasonable to consider these trivial offenses compared to Petitioner's behavior. Id. at 82.

California's Superior Court also reasonably found that the Board also had some evidence of future dangerousness from sources other than the commitment offense. First, the Petitioner has a record of assaultive behavior including battery on a police officer and resisting arrest. (Ct. Rec. 1 at 132.) Petitioner was also charged with marijuana possession, burglary, loitering, possession of firearms on campus, and possession of narcotics.

(Ct. Rec. 1 at 132.) Second, there is evidence to support that Petitioner has an unstable social history. Petitioner admitted to using alcohol and marijuana and trying Benzedrine and Seconal, but has not availed himself of any substance abuse classes. (Ct. Rec. 1 at 132, 136.) Third, the Board had reason to be concerned about Petitioner's institutional behavior because Petitioner had recently (March 2004) had a 115 disciplinary report for disobeying a direct order as well as three previous 115s in 1994-1995. (Ct. Rec. 1 at 132.) The psychological report created for the parole hearing concluded that Petitioner posed a moderate degree of threat to the public. (Ct. Rec. 1 at 134).

This Court finds that there is no federally protected liberty interest to parole. Therefore, any right to parole Petitioner may have must arise from California's statutory and constitutional parole scheme. California has determined that prisoners shall be granted parole unless the Board finds some evidence that the prisoner poses a danger to the public. California's judicial decision was not an "unreasonable application" of California's some evidence of dangerousness requirement and was not "based on an unreasonable determination of the facts in light of the evidence." Accordingly, Petitioner's claim is without merit.

**V.   CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** the Petition for Writ of Habeas Corpus (Ct. Rec. 1) be **DENIED.**

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 13 -

**IT IS FURTHER RECOMMENDED** that the District Court decline to issue a Certificate of Appealability.1/ Any further request for a COA must be addressed to the Court of Appeals.**2/**

**OBJECTIONS**

Any party may object to the magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof.  Such party shall file with the Clerk of the Court all written objections, specifically identifying the portions to which objection is being made, and the basis therefore.  Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.  A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The district judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

_____

1/ 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

2/ *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 14 -

See 28 U.S.C. § 636 (b) (1) (C) , Fed. R. Civ. P. 73, and LMR 4, Local Rules for the Eastern District of California.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive **SHALL FILE** this report and recommendation and serve copies of it on the referring judge and the parties.

**DATED** this 7th day of September, 2010.

                                            s/James P. Hutton
                                            JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 15 -